**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-14-00014-CV**
_____

**ENGLOBAL U.S., INC., Appellant**

**V.**

**RODRICK GATLIN, Appellee**

**On Appeal from the 60th District Court**
**Jefferson County, Texas**
**Trial Cause No. B-193,757**

**OPINION**

This is an interlocutory appeal from the trial court's order denying appellant

ENGlobal U.S., Inc.'s ("ENGlobal") motion to compel arbitration and plea in

abatement. In this appeal, we are asked to decide whether ENGlobal, a party to a

contract containing an arbitration clause, can compel arbitration of a personal

injury claim brought by appellee Rodrick Gatlin, a non-party to the contract, under

the doctrine of "direct benefits estoppel." Based on the record before us, we

conclude that the doctrine of direct benefits estoppel does not apply so as to require

1

Gatlin to arbitrate his claims against ENGlobal.  Therefore, we affirm the order of the trial court.

## I.	Background

Phillips 66 Company ("Phillips 66") owns and operates an oil refinery near Lake Charles, Louisiana (the "Lake Charles refinery").[1] Phillips 66, or its predecessor in interest, contracted with Clean Harbors, an industrial service contractor, to clean oil storage tanks at the Lake Charles refinery. On June 15, 2012, Rodrick Gatlin, an employee of Clean Harbors, was working as a hydroblaster in an oil storage tank at the Lake Charles refinery.  Gatlin contends that while he was performing that work, the lanyard system on the safety harness he was required to wear became ensnared in the walkway or working surface of the storage tank, causing him to fall and injure his back.

---

[1] The record reflects that in 2012, ConocoPhillips Company ("ConocoPhillips") underwent a corporate restructuring, pursuant to which it separated into two separate, stand-alone companies via a tax free spin-off of its refining and marketing businesses. The effect of the spin-off was that ConocoPhillips retained its exploration and production businesses, while its refining and marketing businesses became Phillips 66 Company. Although the record indicates that ConocoPhillips expected the separation to be completed during the second calendar quarter of 2012, the record does not reflect the date that the separation was actually completed.  Gatlin has named both ConocoPhillips and Phillips 66 as party defendants in this case and has made allegations against both as the owner of the premises where the alleged injuries occurred.  For simplicity, we refer to the owner of the Lake Charles refinery in this opinion as "Phillips 66." However, we express no opinion herein regarding which entity in fact owned, operated, or controlled the premises at the time of the accident made the basis of this lawsuit.

At the time of the accident, ENGlobal was a contractor performing engineering and construction management services for Phillips 66 at the Lake Charles refinery. The relationship between ENGlobal and Phillips 66 was governed, at least in part, by a master service agreement (the "MSA").[2] Paragraph 31 of the MSA contains a dispute resolution provision, which states: "The parties agree that they will use the procedures outlined in Exhibit "F" ("Dispute Resolution"), attached hereto and made a part hereof, to resolve any dispute which may arise between them under this Agreement or under any Service Order." Exhibit "F", in turn, contains the following arbitration clause:

> **Arbitration.** Any dispute, controversy, or claim (of any and every kind or type, whether based upon contract, tort, statute, regulation or otherwise) (a "Dispute") arising out of, connected with or relating in any way to this Agreement or any Service Order, including any question regarding its existence, validity or termination, which cannot be resolved by direct communication between the parties shall be referred to and resolved by final and binding arbitration.

It is undisputed that Gatlin did not sign and is not a party to the MSA.

Gatlin filed suit against Phillips 66, ConocoPhillips, and ENGlobal, seeking to recover damages for the injuries he sustained as a result of the accident. In his

---

[2] The MSA was executed by ENGlobal and ConocoPhillips in May 2011. By letter dated February 16, 2012, ConocoPhillips notified ENGlobal that it intended to assign its interest in the MSA to Phillips 66 as part of a corporate restructuring. The letter stated that the assignment would become effective on "the date the transfer of the downstream assets of [ConocoPhillips] to Phillips 66 is finalized[.]" The record does not reflect the date that the transfer of assets was actually finalized. The record, therefore, does not reflect the date that the assignment of the MSA from ConocoPhillips to Phillips 66 became effective.

second amended petition, Gatlin alleged claims against the defendants for premises liability and negligent undertaking. ENGlobal subsequently filed a motion to compel arbitration of Gatlin's claims under the Texas Arbitration Act ("TAA") and a plea in abatement. Following a hearing, the trial court denied ENGlobal's motion to compel arbitration and plea in abatement. ENGlobal timely filed this interlocutory appeal.

## II. Standard of Review

When reviewing an order denying a motion to compel arbitration, "we defer to the trial court's factual determinations that are supported by evidence but review the trial court's legal determinations de novo." *Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013) (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009)). Whether a valid arbitration agreement exists is a legal question subject to de novo review. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *In re Bath Junkie Franchise, Inc.*, 246 S.W.3d 356, 363-64 (Tex. App.—Beaumont 2008, no pet.).

## III. Discussion

Both parties appear to agree that the TAA governs the arbitration agreement in this case.[3] A party attempting to compel arbitration under the TAA must

---

[3] ENGlobal moved to compel arbitration under the TAA only and filed this interlocutory appeal expressly under section 171.098(a)(1) of the Texas Civil Practice and Remedies Code, a provision of the TAA. *See* Tex. Civ. Prac. & Rem.

establish (1) the existence of a valid arbitration agreement, and (2) that the claims asserted fall within the scope of that agreement. *See Rachal*, 403 S.W.3d at 843; *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006). "Although courts generally enforce arbitration agreements, a court may not order arbitration in the absence of such an agreement." *Cappadonna Elec. Mgmt. v. Cameron Cnty.*, 180 S.W.3d 364, 370 (Tex. App.—Corpus Christi 2005, no pet.). If the party opposing arbitration denies the existence of an agreement to arbitrate, the trial court may summarily decide whether to compel arbitration on the basis of uncontroverted affidavits, pleadings, discovery, and stipulations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.021(b) (West 2011); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992). If the trial court finds that a valid arbitration agreement exists, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration. *J.M. Davidson*, 128 S.W.3d at 227. Although there is a strong presumption in Texas favoring arbitration, "the presumption arises

Code Ann. § 171.098 (West 2011). Gatlin does not dispute ENGlobal's assertion that the TAA controls and has not raised any statutory exceptions to the applicability of the TAA, including the TAA's exception for personal injury claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.002 (West 2011). Neither party asserts that the Federal Arbitration Act ("FAA") controls or preempts the TAA in this case. *See Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011) (concluding that when a party seeking to compel arbitration invokes the TAA, the burden is on the non-movant "to show that some Texas state law or statutory requirement would prevent enforcement of the arbitration agreement under the TAA so that the FAA would preempt the Texas act."). Therefore, we analyze the arbitration agreement in this case under the TAA.

only after the party seeking to compel arbitration proves that a valid arbitration agreement exists." *Id.*

Whether an arbitration agreement is binding on a non-party implicates the existence of a valid agreement to arbitrate and is therefore a gateway matter for the trial court to decide. *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005); *McGehee v. Bowman*, 339 S.W.3d 820, 826 (Tex. App.—Dallas 2011, no pet.). We apply ordinary contract principles to determine whether a valid agreement to arbitrate exists. *See J.M. Davidson*, 128 S.W.3d at 227 (citing *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). As a general rule, a person must sign an arbitration agreement before he or she will be bound by it. *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011). "[U]nder certain circumstances," however, "principles of contract law and agency may bind a non-signatory to an arbitration agreement." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005). The Texas Supreme Court has noted six theories recognized by federal courts in which a non-signatory may be bound to an arbitration agreement: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third-party beneficiary. *Id.* at 739. In the present case, ENGlobal asserts that Gatlin, a non-signatory to the MSA, is bound to the arbitration agreement contained in the MSA under the theory of

6

"direct benefits estoppel," a type of equitable estoppel that has been adopted by the Texas Supreme Court in the arbitration context. *See id*.

## A.    Direct Benefits Estoppel

Under the doctrine of "direct benefits estoppel," a non-signatory plaintiff who seeks the benefits of a contract or who seeks to enforce the terms of a contract "'is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes.'" *Rachal*, 403 S.W.3d at 846 (quoting *Kellogg Brown & Root*, 166 S.W.3d at 739). "'[T]he doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him.'" *Id.* (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000)). The doctrine precludes a litigant from both "hav[ing] his contract and defeat[ing] it too." *Weekley Homes*, 180 S.W.3d at 135.

Direct benefits estoppel can apply to bind a non-signatory to an arbitration agreement in two ways. *Id*. at 131-35. First, a non-signatory who uses the litigation process to sue based on a contract subjects him or herself to the contract's terms. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755 (Tex. 2001). A non-signatory sues "based on a contract" when he or she "seeks, through the claim, to derive a

7

direct benefit from the contract containing the arbitration provision." *Kellogg Brown & Root*, 166 S.W.3d at 741. "[W]hether a claim seeks a direct benefit from a contract containing an arbitration clause turns on the substance of the claim, not artful pleading." *Weekley Homes*, 180 S.W.3d at 131-32. A claim seeks a direct benefit from a contract, and arbitration can be compelled, if liability under the claim "arises solely from the contract or must be determined by reference to it." *Id.* at 132; *see also Kellogg Brown & Root*, 166 S.W.3d at 739 ("[A] non-signatory plaintiff may be compelled to arbitrate if it seeks to enforce terms of a contract containing an arbitration provision."). By contrast, a claim does not seek a direct benefit from a contract, and arbitration cannot be compelled, if liability under the claim "arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law." *In re Morgan Stanley & Co., Inc.*, 293 S.W.3d 182, 184 n.2 (Tex. 2009); *see also Kellogg Brown & Root*, 166 S.W.3d at 739-40 ("If, however, a non-signatory's claims can stand independently of the underlying contract, then arbitration generally should not be compelled under [a direct benefits estoppel] theory.").

In determining whether a claim seeks a direct benefit from a contract under the doctrine of direct benefits estoppel, the Texas Supreme Court has cautioned that "a non-signatory plaintiff cannot be compelled to arbitrate on the sole ground that, but for the contract containing the arbitration provision, [the non-signatory]

8

would have no basis to sue." *Kellogg Brown & Root*, 166 S.W.3d at 740. Thus, "although a non-signatory's claim may relate to a contract containing an arbitration provision, that relationship does not, in itself, bind the non-signatory to the arbitration provision." *Id*. at 741. Rather, "'[t]he benefits must be direct—which is to say, flowing directly from the agreement.'" *Id*. (quoting *MAG Portfolio Consult., GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir. 2001)).

The second way in which direct benefits estoppel may be applied to bind a non-signatory to an arbitration agreement is when the non-signatory "seek[s] or obtain[s] direct benefits from a contract by means other than a lawsuit." *Weekley Homes*, 180 S.W.3d at 132. Under this application of the doctrine, a non-signatory may be compelled to arbitrate if he or she deliberately seeks and obtains substantial benefits from the contract during the performance of the agreement. *Id*. at 132-33. If the non-signatory consistently and knowingly insists that others treat it as a party to the contract during the life of the contract, the nonparty "cannot later 'turn[] its back on the portions of the contract, such as an arbitration clause, that it finds distasteful.'" *Id*. at 135 (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.,* 269 F.3d 187, 200 (3d Cir.2001)).

In summary, to be compelled to arbitrate under direct benefits estoppel, a non-signatory must either (1) bring claims in a lawsuit that seek direct benefits from a contract containing an arbitration clause, or (2) deliberately seek and obtain

9

substantial benefits from the contract itself outside of litigation. *See id.* at 131-35. ENGlobal's argument that Gatlin should be bound to the MSA's arbitration provision is premised solely on the first application of the direct benefits estoppel doctrine. Therefore, the issue before us is whether Gatlin, by asserting his claims against ENGlobal in this lawsuit, is seeking a direct benefit from the MSA, and whether Gatlin should therefore be bound by the terms of the MSA's arbitration agreement.

## B. Gatlin's Claims against ENGlobal

Gatlin's second amended petition asserts claims against ENGlobal for premises liability and negligent undertaking.[4] We begin with Gatlin's premises liability claim.

### 1. Premises Liability

#### a. Right of Control over the Premises

In support of his premises liability claim, Gatlin alleges that ENGlobal owed him a duty of care because ENGlobal was in control of the portion of the premises

---

[4] Gatlin's second amended petition also asserts a claim against ENGlobal for gross negligence. In support of that claim, Gatlin alleges that the acts and omissions that give rise to his premises liability and negligent undertaking claims are also sufficient to constitute gross negligence. Because Gatlin relies on his premises liability and negligent undertaking claims as the basis for his gross negligence claim, any analysis of whether direct benefits estoppel applies to Gatlin's gross negligence claim will be substantively identical to an analysis of whether direct benefits estoppel applies to his premises liability and negligent undertaking claims. Therefore, we do not separately address Gatlin's gross negligence claim in this opinion.

containing the alleged premises defect at the time the accident occurred. Gatlin contends that ENGlobal knew or should have known of the alleged defect, that ENGlobal breached its duty of care to Gatlin by failing to warn him of the alleged defect or by failing to take various alleged actions to eliminate the risk of harm, and that ENGlobal's breach of duty was a proximate cause of his injuries.

Premises liability is a special form of negligence in which the duty owed to the plaintiff depends upon the status of the plaintiff at the time the incident occurred. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). If the plaintiff is a business invitee, such as the employee of an independent contractor working on the premises, a premises owner or occupier owes the plaintiff a duty to use reasonable care to keep the premises under its control in a safe condition. *Elmgren v. Ineos USA, LLC*, 431 S.W.3d 657, 668 (Tex. App.—Houston [14th Dist.] 2014, pet. filed); *Montes v. Indian Cliffs Ranch, Inc.*, 946 S.W.2d 103, 107 (Tex. App.—El Paso 1997, writ denied).

"Ordinarily[,] a person who does not own the real property must assume control over and responsibility for the premises before there will be liability for a dangerous condition existing on the real property." *City of Denton v. Page*, 701 S.W.2d 831, 835 (Tex. 1986). "It is possession and control which generally must be shown as a prerequisite to liability." *Id.*; *see also Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002) ("The relevant inquiry is whether the defendant

11

assumed sufficient control over the part of the premises that presented the alleged danger so that the defendant had the responsibility to remedy it."). As such, an independent contractor on a work site, who assumes control over and responsibility for the premises, is charged with the same duty as an owner or possessor of the premises. *See Page*, 701 S.W.2d at 834; *Rendleman v. Clarke*, 909 S.W.2d 56, 60 (Tex. App.—Houston [14th Dist.] 1995, writ dism'd as moot). Control over the premises can be proven by a contractual agreement assigning a right of control or by evidence of actual control. *See La China v. Woodlands Operating Co., L.P.*, 417 S.W.3d 516, 522 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

ENGlobal argues that Gatlin's premises liability claim seeks a direct benefit from the MSA because Gatlin relies on the MSA to establish that ENGlobal retained a contractual right of control over the premises. Nothing in the record before us, however, establishes that Gatlin is relying on a contractual right of control under the MSA to assert his premises liability claim. Gatlin's second amended petition, which is Gatlin's live pleading for purposes of this appeal, alleges that ENGlobal controlled the portion of the premises containing the dangerous condition, but it is silent as to whether ENGlobal's alleged control over the premises arose from a contract, such as the MSA, or from the exercise of actual control. Thus, while it is possible that Gatlin's claim relies on a theory of contractual control over the premises, as ENGlobal contends, it is equally possible

12

that Gatlin's claim relies only on a theory of actual control, in which case ENGlobal's purported control over the premises could potentially be established without reference to the MSA. *See Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002) (noting that the exercise of actual control can be established in the absence of a contractual agreement).

ENGlobal did not file special exceptions to Gatlin's second amended petition to request greater specificity, and ENGlobal does not otherwise point to anything in the record that supports its contention that Gatlin's claim relies on a contractual right of control created by the MSA.[5] As the party seeking to compel arbitration, ENGlobal had the burden to prove that Gatlin's premises liability claim sought a direct benefit from the MSA. *See Glassell Producing Co. v. Jared Res., Ltd.*, 422 S.W.3d 68, 75, 83 (Tex. App.—Texarkana 2014, no pet.). Because

---

[5] ENGlobal appears to suggest that we should consider certain allegations contained in Gatlin's first amended petition in evaluating whether Gatlin's claims seek a direct benefit from the MSA. To the extent ENGlobal makes such a suggestion, we disagree. Gatlin's second amended petition was the live pleading on file for Gatlin at the time ENGlobal filed its motion to compel arbitration, at the time of the hearing on such motion, and it continues to be Gatlin's live pleading at this time. As a general rule, "[a] plaintiff's timely filed amended pleading supersedes all previous pleadings and becomes the controlling petition in the case regarding theories of recovery." *Elliott v. Methodist Hosp.*, 54 S.W.3d 789, 793 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *see also* Tex. R. Civ. P. 63, 65. Once Gatlin filed his second amended petition, it superseded and completely replaced his first amended petition. *See* Tex. R. Civ. P. 65; *Elliott*, 54 S.W.3d at 793. We, therefore, limit our analysis of Gatlin's pleadings to the allegations contained in his second amended petition.

13

ENGlobal has not pointed to anything in the record that supports its contention that Gatlin is relying on a contractual right of control created by the MSA, and because ENGlobal has not argued any other theory by which Gatlin's premises liability claim might seek a direct benefit from the MSA, we conclude that ENGlobal has not satisfied its burden to show that direct benefits estoppel applies to require arbitration of Gatlin's premises liability claim.[6] *See id.* at 83 (concluding that defendant did not carry its burden to show that equitable estoppel required arbitration of plaintiff's claims where plaintiff's pleadings were vague and did not clearly indicate that liability under the claims required reference to the contract containing the arbitration clause and defendant failed to file special exceptions).

### b.    Creation of the Dangerous Condition

Gatlin's second amended petition also alleges that ENGlobal is liable because it created the dangerous condition that proximately caused Gatlin's injuries. Under certain circumstances, "one who creates a dangerous condition, even though he or she is not in control of the premises when the injury occurs, owes a duty of due care." *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910,

---

[6] Because ENGlobal has not met its burden to show that Gatlin is relying on the MSA to establish that ENGlobal retained a contractual right of control over the premises, we need not decide whether a premises liability claim by a non-signatory plaintiff against a defendant, who is a signatory to a contract containing an arbitration clause and whose alleged right of control over the premises arises from such contract, seeks a direct benefit from the contract under the doctrine of direct benefits estoppel.

912 (Tex. 1997); *see also Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 54 (Tex. 1997) (concluding that a person who creates a dangerous condition owes a duty of ordinary care to make the premises safe); *Page*, 701 S.W.2d at 835 ("[A] private person who has created the dangerous condition may be liable even though not in control of the premises at the time of injury."). Thus, a contractor on a work site, who creates a dangerous condition and leaves the premises in an unsafe condition, can be liable to third parties for injuries proximately caused by the dangerous condition, even though the contractor is not in control of the premises at the time of the accident. *Strakos v. Gehring*, 360 S.W.2d 787, 790 (Tex. 1962); *but see Allen Keller Co. v. Foreman*, 343 S.W.3d 420, 425-26 (Tex. 2011).

In *Weekley Homes*, the Texas Supreme Court addressed the application of direct benefits estoppel in the context of a personal injury claim by a bystander who alleged that she became ill from dust created by the defendant contractor's repairs on the premises. 180 S.W.3d at 132. In that case, an individual entered into a contract with Weekley Homes, ("Weekley"), a contractor, for the construction of a home. *Id*. at 129. The contract contained a broad arbitration clause that extended to claims "between Purchaser and Seller . . ., whether sounding in contract, tort, or otherwise . . . [to] include . . . those arising out of or relating to . . . the design, construction, preparation, maintenance, or repair of the Property." *Id*. The individual who signed the contract intended for his daughter and her family to live

15

with him in the home. *Id*. The daughter, who was not a party to the contract, negotiated directly with Weekley on many of the issues relating to the construction of the home both before and after construction. *Id*. After construction was completed, numerous problems with the home allegedly arose. *Id*. The daughter handled most of those problems and negotiated Weekley's efforts to repair the home. *Id*. Both the father and the daughter subsequently sued Weekley. *Id*. The father asserted claims for negligence, breach of contract, statutory violations, and breach of warranty. *Id*. The daughter sued only for personal injuries, alleging that dust from Weekley's negligent repairs caused her to develop asthma. *Id*. Weekley moved to compel arbitration of all claims under the FAA. *Id*. at 129-30. The trial court granted the motion as to the father's claims, but refused to compel arbitration as to the daughter's claims because she was not a party to the contract. *Id*. at 130. Weekley filed a writ of mandamus with the court of appeals, which denied the writ. *Id*. Weekley then filed a similar request with the Texas Supreme Court, arguing that the daughter, although not a party to the contract, was bound by the contract's arbitration clause under the doctrine of direct benefits estoppel. *Id*. at 130, 132.

In addressing Weekley's argument, the Court initially analyzed whether the first category of direct benefits estoppel applied to the daughter's claim—that is, whether the daughter, by asserting her personal injury claim against Weekley,

16

sought a direct benefit from the contract. *Id.* at 132. The Court explained that under the first category of direct benefits estoppel, "[c]laims must be brought on the contract (and arbitrated) if liability arises solely from the contract or must be determined by reference to it[,]" but "claims can be brought in tort (and in court) if liability arises from general obligations imposed by law." *Id.* Applying these principles, the Court concluded that the daughter's personal injury claim against Weekley did not seek a direct benefit from the contract. *Id.* The Court noted that the daughter "purport[ed] to make no claim on the Weekley contract, claiming only that she developed asthma from dust created by Weekley's repairs of the home." *Id.* The Court explained that "[w]hile Weekley's duty to perform those repairs arose from the [contract], a contractor performing repairs has an independent duty under Texas tort law not to injure bystanders by its activities, or by premises conditions it leaves behind."[7] *Id.* The Court explained that there was "nothing in the sparse record" before it to suggest that the daughter's claim was different from "what any bystander might assert, or what she might assert if the contractor were not Weekley." *Id.* Therefore, the Court concluded that the first category of direct

---

[7] As support for this statement, the Court cited, in part, to its prior decision in *Strakos*. *Id.* at 132. In *Strakos*, the Texas Supreme Court held that a contractor on a work site, who creates a dangerous condition and leaves the premises in an unsafe condition, can be liable to third parties for injuries proximately caused by the dangerous condition, even though the contractor is not in control of the premises at the time of the accident. 360 S.W.2d at 790.

benefits estoppel did not apply to bind the daughter to the contract's arbitration clause. *Id.*

Similar to the plaintiff in *Weekley Homes*, Gatlin does not purport to make any claim on the MSA by asserting his premises liability claim against ENGlobal. Instead, Gatlin claims only that he sustained personal injuries as a direct and proximate result of a dangerous condition of the premises created by ENGlobal. While ENGlobal may have had a contractual duty under the MSA to perform certain services for Phillips 66 on the premises, ENGlobal had an independent duty under Texas tort law not to injure others, including Gatlin, by its activities or by dangerous premises conditions it created or left behind. *See Weekley Homes*, 180 S.W.3d at 132. As in *Weekley Homes*, nothing in the record in this case suggests that Gatlin's claim against ENGlobal, as the alleged creator of the dangerous condition, "is different from what any bystander might assert" or what Gatlin "might assert if the contractor were not" ENGlobal. *See id.* Liability under Gatlin's premises liability claim, therefore, arises not from the MSA, as ENGlobal contends, but "from general obligations imposed by law." *See id.*; *Morgan Stanley & Co.*, 293 S.W.3d at 184 n.2.

Further, we reject any argument by ENGlobal that Gatlin derived a direct benefit from the MSA based on the fact that ENGlobal would not have been working on the premises (and, presumably, would not have created the dangerous

condition on the premises) but for the MSA. Gatlin, as a non-signatory to the MSA, cannot be compelled to arbitrate on the sole ground that, but for the contract containing the arbitration provision, Gatlin would have no basis to sue. *See Kellogg Brown & Root*, 166 S.W.3d at 740. Rather, for Gatlin to be compelled to arbitrate, ENGlobal must show that Gatlin received a benefit directly from the MSA. *See id.* (quoting *MAG Portfolio Consult.*, 268 F.3d at 61). For the reasons discussed above, that is not the case here. We conclude, therefore, that Gatlin, by asserting that ENGlobal created the dangerous condition that caused his alleged injuries, does not seek a direct benefit from the MSA under the doctrine of direct benefits estoppel.

### 2. Negligent Undertaking

Gatlin's second amended petition also alleges a claim against ENGlobal for negligent undertaking. "Texas law generally imposes no duty to take action to prevent harm to others absent certain special relationships or circumstances." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000). However, "'one who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured thereby.'" *Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 395 (Tex. 1991) (quoting *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d

116, 119 (Tex. 1976)).  As to third parties, section 324A of the Restatement

(Second) of Torts states the rule as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a)    his failure to exercise reasonable care increases the risk of such harm, or
>
> (b)    he has undertaken to perform a duty owed by the other to the third person, or
>
> (c)    the harm is suffered because of reliance of the other or the third person upon the undertaking.

RESTATEMENT (SECOND) OF TORTS § 324A (1965). This Court has recognized

section 324A as a valid theory of liability under Texas law.  *See Rao v. Rodriguez*,

923 S.W.2d 176, 180 (Tex. App.—Beaumont 1996, no writ).

For a duty to arise under section 324A, the defendant must undertake to

render services to another, which the defendant should recognize as necessary for

the protection of a third person or his property. *See Sbrusch*, 818 S.W.2d at 396

(citing RESTATEMENT (SECOND) OF TORTS §324A); *Banzhaf v. ADT Sec. Sys. Sw.,*

*Inc.*, 28 S.W.3d 180, 186 (Tex. App.—Eastland 2000, pet. denied); *Seay v.*

*Travelers Indem. Co.*, 730 S.W.2d 774, 778 (Tex. App.—Dallas 1987, no writ).

The undertaking can be gratuitous or for consideration.  *See* RESTATEMENT

(SECOND) OF TORTS § 324A. If the defendant has entered into a contractual

20

agreement to render services to another, the defendant's complete or partial performance of the contractual promise to render services can constitute an undertaking for purposes section 324A.[8] *See Sbrusch*, 818 S.W.2d at 396-97.

Gatlin's second amended petition alleges that ENGlobal "undertook to provide . . . safety over the worksite" and thereby assumed a duty "to provide [Gatlin] with a safe place to work[.]" Gatlin alleges that ENGlobal breached that duty by providing Gatlin with an unsafe walkway or working surface in the oil storage tank and that ENGlobal's breach was a proximate cause of his alleged injuries. Based on these allegations, ENGlobal asserts that any alleged failure by ENGlobal to provide Gatlin with a safe place to work "is a violation of a duty of care created solely by the MSA[.]" ENGlobal, therefore, argues that because Gatlin's negligent undertaking claim is based on the breach of a duty created exclusively by the MSA, it seeks a direct benefit from the MSA.

Gatlin responds that his negligent undertaking claim is not based on the breach of a duty created by the MSA, but on the breach of a duty imposed by Texas tort law. Specifically, he argues that ENGlobal had, in addition to its

---

[8] We note that an undertaking can also consist of a promise by the defendant to render services to another, coupled with the plaintiff's reliance on that promise. *See Tex. Drydock, Inc. v. Davis*, 4 S.W.3d 919, 922 (Tex. App.—Beaumont 1999, no pet.). Here, Gatlin contends that he had no knowledge of the existence of the MSA or its contents at the time the accident occurred. Gatlin, therefore, does not contend that he relied on an alleged contractual promise by ENGlobal to provide safety over the worksite.

contractual duties under the MSA, a common law duty in tort to exercise reasonable care in performing its contractual obligations under the MSA and that ENGlobal's breach of its common law duty forms the basis of his negligent undertaking claim. Gatlin contends that while his negligent undertaking claim might "relate to" the MSA, it stands independently of, and does not seek a direct benefit from, the MSA. We agree with Gatlin.

The rule underlying section 324A was adopted by the Texas Supreme Court nearly a century ago in *Fox v. Dallas Hotel Co.*, 240 S.W. 517, 520-21 (Tex. 1922), *overruled on other grounds by Burk Royalty Co. v. Walls*, 616 S.W.2d 911 (Tex. 1981). In *Fox*, the defendant, Dallas Hotel Company, entered into a contract with A. Harris & Co., the decedent's employer, to maintain and repair elevators in a building that was under the control of the employer. *Id.* at 517-18. As a result of the defendant's negligent maintenance and repair, the decedent was killed by an elevator in the building. *Id.* at 518. The Court held that the defendant was liable in tort, explaining the source and nature of the duty as follows:

> Upon defendant in error taking over the control and repair of the elevators, to promote its own interests, it became charged with the duty . . . to exercise ordinary care to maintain the elevators in a condition of reasonable safety for use. This duty to one using the elevators depended in no wise on any contractual obligation in favor of the user from defendant in error. The duty is grounded on the obligation to exercise ordinary care in an undertaking which cannot otherwise be carried on without endangering the lives and limbs of others. An elevator such as that in which Fox was injured is a structure designed and maintained for use by human beings. Death or

22

> bodily harm to a fellow being is the natural consequence of failure to keep the elevator in repair. Having brought under its control a mechanical appliance, which was, or should have been, known to be attended by grave risks, defendant in error was under the specific, legal duty to exercise ordinary care to protect those for whose use the appliance was provided against the risks it foresaw or should have foreseen.
>
> Plaintiff in error's cause of action is not for breach of the contract between defendant in error and A. Harris & Co., but is for damages sustained from defendant in error's tort.

*Id*. at 520-21. The Court, therefore, made clear that the duty under section 324A arises not from any contract obligation, but from Texas tort law. *Id*.; *see also Sbrusch*, 818 S.W.2d at 396 (noting that the duty under section 324A is a "tort obligation"); *Seay*, 730 S.W.2d at 776 (noting that a claim under section 324A "sound[s] in tort").

Assuming, without deciding, that the MSA required ENGlobal to provide safety over the work site, then ENGlobal had a contractual duty under the MSA to make the work site safe in the manner, if any, specified by the MSA. However, to the extent ENGlobal undertook to perform its contractual promise to provide safety over the work site, and to the extent it should have recognized that its actions were necessary for the protection of Gatlin, then ENGlobal also had a duty—imposed by Texas tort law—to exercise reasonable care in performing its undertaking so as not to injure Gatlin. *See Sbrusch*, 818 S.W.2d at 396-97; *Lowe's Home Ctrs., Inc. v. GSW Mktg., Inc.*, 293 S.W.3d 283, 292 (Tex. App.—Houston [14th Dist.] 2009,

23

pet. denied) (quoting *Fox*, 240 S.W. at 520-21); *Seay*, 730 S.W.2d at 776; RESTATEMENT (SECOND) OF TORTS § 324A; *see also Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, No. 13-0776, 2014 WL 4116839, at *1 (Tex. Aug. 22, 2014) ("[T]he negligent performance of a contract that proximately injures a non-contracting party's property or person states a negligence claim[.]"). Gatlin's negligent undertaking claim alleges a breach of the latter duty—that is, ENGlobal's common law tort duty to exercise reasonable care in performing its undertaking so as not to injure third persons, such as Gatlin. Therefore, liability under Gatlin's negligent undertaking claim arises not from the MSA, but "from general obligations imposed by law." *Weekley Homes*, 180 S.W.3d at 132. The fact that Gatlin's negligent undertaking claim may "relate to" the MSA in the sense that ENGlobal would not have performed the undertaking but for the MSA does not, in itself, bind Gatlin to the arbitration clause in the MSA. *See Kellogg Brown & Root*, 166 S.W.3d at 741. We conclude, therefore, that Gatlin's negligent undertaking claim, as alleged, does not seek a direct benefit from the MSA.

Based on the record before us, we conclude that the doctrine of direct benefits estoppel does not apply so as to bind Gatlin, a non-signatory, to the arbitration clause in the MSA. The trial court, therefore, properly denied ENGlobal's motion to compel arbitration and plea in abatement. Accordingly, we

affirm the trial court's order denying ENGlobal's motion to compel arbitration and plea in abatement.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on April 23, 2014
Opinion Delivered November 6, 2014

Before McKeithen, C.J., Kreger and Johnson, JJ.

25