

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00515-CV

**SPECIALTY SELECT CARE CENTER OF SAN ANTONIO**
d/b/a Casa Rio Healthcare and Rehabilitation,
Appellant

v.

Adolfo R. **JUIEL**, Individually, Anna M. Juiel, Individually and on Behalf of Isaac Juiel,
Individually, and as All Heirs of the Estate of Bertha Juiel, Deceased, and Lisa Ochoa, as
Representative of the Estate of Nora Nieto, Deceased
Appellees

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-CI-04911
Honorable Karen H. Pozza, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Marialyn Barnard, Justice
                Rebeca C. Martinez, Justice

Delivered and Filed:  July 20, 2016

REVERSED AND REMANDED

This is an interlocutory appeal from a trial court's order denying appellant Specialty Select

Care Center of San Antonio, LLC d/b/a Casa Rio Healthcare and Rehabilitation's ("Casa Rio")

motion to compel arbitration. On appeal, Casa Rio raises two issues challenging the trial court's

order, arguing: (1) it was unnecessary for the parties' arbitration agreements to comply with section

74.451 of the Texas Medical Liability Act ("TMLA") because that provision is preempted by the

Federal Arbitration Act ("FAA"),[1] and the McCarran-Ferguson Act ("MFA") does not alter the applicability of the FAA; and (2) the parties entered into valid and enforceable arbitration agreements under the FAA. We reverse the trial court's order denying the motion to compel, render judgment granting the motion to compel, and remand this matter to the trial court for further proceedings consistent with our opinion, including the grant of an appropriate stay.

## BACKGROUND

This appeal concerns two unrelated individuals — Nora Nieto and Bertha Juiel — who were residents of Casa Rio, a nursing home facility. Nora Nieto was admitted as a Casa Rio resident in 2011. Prior to her admission, Nora completed and signed an admission agreement and numerous other documents, including a document entitled "Resident and Facility Arbitration Agreement." Pursuant to that agreement, Nora agreed to arbitrate "any legal dispute, controversy, demand or claim . . . that arises out of or relates to the Resident Admission Agreement or any service or health care provided by Casa Rio . . . ." Bertha Juiel was admitted to Casa Rio in 2012. Prior to Bertha's admission to the facility, her daughter, Anna M. Juiel signed the Casa Rio admission agreement as well as numerous other documents, including the "Resident and Facility Arbitration Agreement," which included the same language as the one signed by Nora. Both residents are deceased.

In 2014, appellees Adolfo R. Juiel, Individually, Anna M. Juiel, Individually and on Behalf of Isaac Juiel, Individually, and as All Heirs of the Estate of Bertha Juiel, Deceased (collectively "Juiel") and Lisa Ochoa, as Representative of the Estate of Nora Nieto, Deceased ("Nieto") filed a health care liability claim against Casa Rio. Both Nieto and Juiel alleged Casa Rio "failed to properly and timely render appropriate medical and nursing care, and failed to ensure that [Nora

---

[1] None of the parties dispute the applicability of the FAA.

and Bertha were] free from neglect." After the petition was filed, Casa Rio filed its answer, and subsequently a motion to compel arbitration based on arbitration agreements signed by Nora and on behalf of Bertha. Casa Rio also sought to stay all trial court proceedings pending arbitration. After a hearing, the trial court denied Casa Rio's motion to compel. Thereafter, Casa Rio perfected this appeal.

## ANALYSIS

On appeal, Casa Rio challenges the trial court's decision on two bases. First, Casa Rio contends it was unnecessary for the arbitration agreements to comply with section 74.451 of the TMLA because the MFA does not reverse-preempt the FAA. Second, Casa Rio argues Nieto and Juiel entered into valid arbitration agreements.

### *The McCarren-Ferguson Act*

In the brief, Nieto acknowledges the Texas Supreme Court's recent opinion in *Fredericksburg Care Co., L.P. v. Perez*, 461 S.W.3d 513 (Tex. 2015), *cert. denied*, 136 S. Ct. 798 (2016) negates her sole legal basis for contesting Casa Rio's motion to compel. In the trial court, Nieto argued the arbitration agreement signed by Nora did not comply with provisions of the TMLA governing requirements for arbitration provisions. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.451 (West 2011). Based on then-existing case law, including cases from this court, Nieto claimed that because the TMLA was enacted for the purpose of regulating insurance, the federal MFA reverse-preempted the FAA, and therefore, because Casa Rio's arbitration agreement did not comply with the mandates set out in section 74.451 of the TMLA, she could not be compelled to arbitrate. *See, e.g., Fredericksburg Care Co., L.P. v. Lira*, 407 S.W.3d 810, 822 (Tex. App.—San Antonio 2013), *rev'd*, 461 S.W.3d 529 (Tex. 2015); *Williamsburg Care Co., L.P. v. Acosta*, 406 S.W.3d 711, 723 (Tex. App.—San Antonio 2013), *rev'd*, 461 S.W.3d 530 (Tex. 2015); *Fredericksburg Care Co., L.P. v. Perez*, 406 S.W.3d 313, 325–26 (Tex. App.—San Antonio

2013), *rev'd*, 461 S.W.3d 513; *see also* 15 U.S.C.A. § 1012(b) (stating no Act of Congress shall be construed to invalidate, impair, or supersede any state law enacted for purposes of regulating "the business of insurance" unless such Act was enacted for purposes of regulating insurance); 9 U.SC. §§ 1–16 (provisions of Federal Arbitration Act).

In *Perez*, the supreme court held the statutory provisions of the TMLA relating to arbitration do not fall within the MFA exemption from preemption. 461 S.W.3d at 528; *see Lira*, 461 S.W.3d at 529–30; *Acosta*, 461 S.W.3d at 531. In other words, the court held the TMLA arbitration provisions were not enacted for the purpose of regulating the business of insurance, and therefore, such provisions are preempted by the FAA. 461 S.W.3d at 528; *see Lira*, 461 S.W.3d at 529–30; *Acosta*, 461 S.W.3d at 531.

The MFA reverse-preemption argument was the sole legal basis raised by Nieto in the trial court in response to the motion to compel. Accordingly, based on *Perez*, we hold the trial court erred in denying Casa Rio's motion to compel as to Nieto's claims under the TMLA. *See* 461 S.W.3d at 528; *see also Lira*, 461 S.W.3d at 529–30; *Acosta*, 461 S.W.3d at 531.

Juiel also asserted MFA reverse-preemption in the trial court as a basis for challenging the motion to compel. Based on the *Perez* decision, we likewise hold the trial court erred in denying Casa Rio's motion to compel as to Juiel based on the concept of reverse-preemption, i.e., the failure of the Casa Rio arbitration agreement to comply with the mandates of section 74.451 of the TMLA. *See* 461 S.W.3d at 528; *see also Lira*, 461 S.W.3d at 529–30; *Acosta*, 461 S.W.3d at 531.

Accordingly, based on *Perez* and the other supreme court decision cited above, we hold the trial court erred in denying Casa Rio's motion to compel arbitration to the extent its decision was based on the failure of the arbitration agreements to comply with section 74.451 of the TMLA. As explained above, the supreme court has held the TMLA arbitration provisions were not enacted for the purpose of regulating the business of insurance, and therefore, such provisions are

preempted by the FAA. 461 S.W.3d at 528; *see Lira*, 461 S.W.3d at 529–30; *Acosta*, 461 S.W.3d at 531.

### *Valid Arbitration Agreement*

Unlike Nieto, who challenged the motion to compel based only on the alleged applicability of the MFA, Juiel also challenged Casa Rio's motion to compel on the ground that the arbitration agreement was neither valid nor enforceable because Casa Rio failed to prove Anna Juiel, who signed the arbitration agreement on behalf of Bertha, had actual or apparent authority to act on Bertha's behalf. On appeal, Casa Rio argues Anna Juiel's authority is irrelevant because under either third-party beneficiary theory or direct-benefits estoppel theory, Juiel is required to arbitrate. Juiel responds by arguing Casa Rio waived these theories by failing to raise them in the trial court.

Courts generally review a trial court's decision denying or granting a motion to compel arbitration under an abuse of discretion standard. *City of San Antonio v. Cortes*, 468 S.W.3d 580, 583 (Tex. App.—San Antonio 2015, pet. denied). Under the abuse of discretion standard, we give deference to the trial court's factual determinations that are supported by the evidence, but we review legal determinations de novo. *In re Labatt Food Serv.*, 279 S.W.3d 640, 643 (Tex. 2009); *Cortes*, 468 S.W.3d at 583. Thus, the existence and enforceability of an arbitration agreement is a question of law reviewed de novo. *Cortes*, 468 S.W.3d at 583.

Those who seek to compel arbitration must establish the existence of a valid and enforceable arbitration agreement between the parties. TEX. CIV. PRAC. & REM. CODE ANN. § 171.021(a), (b) (West 2011); *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737–38 (Tex. 2005). "Although there is a presumption favoring agreements to arbitrate under the FAA, 'the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists, because the purpose of the FAA [is] to make arbitration agreements as

enforceable as other contracts, not more so.'" *Specialty Select Care Ctr. of San Antonio, LLC v. Flores*, No. 04-13-00888-CV, 2015 WL 5157034, at *2 (Tex. App.—San Antonio Sept. 2, 2015, no pet.) (mem. op.) (quoting *Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737–38). "Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate." *Id.*; *see also G.T. Leach Builders, LLC*, 458 S.W.3d at 524.

In *Specialty Select Care Ctr. of San Antonio, LLC v. Flores*, this court was called upon to determine the very issues raised here with regard to the existence and enforceability of a valid arbitration agreement. 2015 WL 5157034, at *3. In *Flores*, Julie Flores was admitted as a resident to Casa Rio, the same nursing home facility to which Bertha was admitted. *Id.* at *1. Like Bertha, Ms. Flores did not sign the arbitration agreement. *Id.* at *3. Rather, her husband, Jose Flores, signed the arbitration agreement. *Id.* During her tenure as a resident, Ms. Flores suffered a fractured finger. *Id.* at *1. Mr. Flores brought suit against the facility on behalf of his wife, and later her estate, alleging medical liability claims. *Id.* In response to the suit, just as here, Casa Rio moved to compel arbitration under the FAA. *Id.* The trial court denied the motion to compel. *Id.*

On appeal to this court, Casa Rio argued the arbitration agreement was valid and binding — despite Ms. Flores's failure to sign it — based on theories of third-party beneficiary and direct-benefits estoppel. *Id.* at *3. We began our analysis by acknowledging that a contract can consist of more than a single document, and that, in fact, documents "pertaining to the same transaction may be read together, even if they are executed at different times and do not reference each other, and courts may construe all the documents as if they were part of a single, unified instrument. *Id.* at *2 (quoting *In re Laibe Corp.*, 307 S.W.3d 314, 317 (Tex. 2010)). The documents signed by Mr. Flores — the admission agreement and the arbitration agreement — were executed as part of the same transaction. *Id.* Accordingly, we construed them as a single, unified document. *Id.* at *5.

Then, focusing on Casa Rio's estoppel argument, this court recognized estoppel is a theory "that may bind a non-signatory to an arbitration agreement. *Id.* at *4 (citing *Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739). More specifically, we recognized that direct-benefits estoppel can bind a non-signatory in two ways. *Id.* (citing *In re Weekly Homes, L.P.*, 180 S.W.3d 127, 132–33 (Tex. 2005); *ENGlobal U.S., Inc. v. Gatlin*, 449 S.W.3d 269, 275 (Tex. App.—Beaumont 2014, no pet.)). First, a non-signatory will be bound to arbitrate if he sues to enforce a contract that includes an arbitration provision or pursues a claim under the contract. *Id.* (citing *Weekly Homes, L.P.*, 180 S.W.3d at 131–32). Second, a non-signatory will be bound to arbitrate if he "deliberately seeks and obtains substantial benefits from the contract itself." *Id.* (quoting *Weekly Homes, L.P.*, 180 S.W.3d at 132). With regard to the second way a non-signatory may be bound, the supreme court has determined that "when a nonparty consistently and knowingly insists that others treat it as a party, it cannot later turn its back on the portions of the contract, such as an arbitration clause, that it finds distasteful. A nonparty cannot both have his contract and defeat it too." *Id.* (quoting *Weekly Homes, L.P.*, 180 S.W.3d at 132).

We then reviewed the underlying facts of the case. *Id.* at *5. We noted Ms. Flores was admitted to Casa Rio in 2011, where she remained until May of 2013. *Id.* We held Ms. Flores "sought and obtained substantial and direct benefits from the admissions agreement through the services she was provided." *Id.* We therefore concluded that because the admission agreement and arbitration agreement were part of a "single, unified instrument," and Ms. Flores received direct benefits from the admission agreement, her claims were subject to arbitration under the theory of direct-benefits estoppel. *Id.* (citing *Laibe Corp.*, 307 S.W.3d at 317). Based on this holding, we determined it was unnecessary to address whether the parties were bound to arbitrate based on the third-party beneficiary theory. *Id.*

The record establishes the documents at issue in *Flores* — the admission and arbitration agreements — are similar to those at issue in this case. And, just as in *Flores*, the admission agreement and arbitration agreement signed by Anna Juiel on behalf of Bertha were executed as part of the same transaction. *See id.* at *2. We therefore construe them as a single, unified document. *See id.* at *5. The record shows Bertha was a Casa Rio resident from January 11, 2012, through June 18, 2012. During that time, she sought and received substantial and direct benefits from the admission agreement through the many services provided to her by Casa Rio. *See id.* at *5. The numerous services Bertha received were detailed in a document verified by affidavit. Accordingly, we conclude, just as we did in *Flores*, that the claims brought by Juiel are subject to arbitration based on the theory of direct-benefits estoppel. *See id.* at *5. And, as in *Flores*, we hold we need not address Casa Rio's alternate third-party beneficiary theory.

Juiel attempts to distinguish the *Flores* decision by arguing that unlike the arbitration agreement in *Flores*, the arbitration agreement in this case specifically states the agreement to arbitrate is "not a precondition to the furnishing of services to Resident by the Facility." Thus, according to Juiel, "the arbitration agreement played no role in the furnishing of services to Bertha Juiel." According to Juiel, because there is no evidence Bertha received any services, "much less a substantial or direct benefit, under or from the arbitration agreement," arbitration cannot be compelled based on the theory of direct-benefits estoppel. In other words, because Bertha would have received services from Casa Rio without the existence of an arbitration agreement, Casa Rio has failed to show any sort of detriment that would support the direct-benefits estoppel theory, i.e., there is no *quid pro quo*.

In support of this contention, Juiel argues we based our decision to apply the estoppel theory in *Flores* on the fact that Casa Rio provided services under an admission agreement pursuant to which the arbitration clause was a precondition for the provision of services, and

therefore, because Ms. Flores accepted benefits under the admission agreement, her husband was estopped from denying the applicability of the arbitration provision. And, because in this case the arbitration provision in this case contains the "no precondition" language, there was no substantial or direct benefit to Bertha. We disagree.

First, we have closely reviewed our decision in *Flores* and find it was not based on any precondition language in either agreement. Rather, our decision was based on our determination that the agreements, which were entered into as part of the same transaction, constitute a single, unified document, and from this document, Bertha obtained direct benefits. *Id.* As stated by Casa Rio, whether Anna Juiel was required to sign the arbitration agreement as a condition of Bertha's admission to the facility was not the determinative issue — in fact, it was not an issue at all. *See id.*

It appears Juiel bases this interpretation of our *Flores* decision on a "see also" cite to a federal district court case from South Carolina — *THI of South Carolina at Magnolia Manor-Inman, LLC v. Gilbert*, No. 7:13-CV-2929-BHH, 2014 WL 6863440, at *4 (D.S.C. Oct. 31, 2014). In *Gilbert*, the district court held a nursing home resident's estate was estopped from avoiding an arbitration provision in an admission agreement — despite the fact it was not signed by the resident, but a representative of the resident — because the nursing home provided services to the resident under the agreement and the resident received the benefits from those services. 2014 WL 6863440, at *4. Thus, the estate was estopped from denying the enforceability of the arbitration provision. *Id.* We see nothing in either the *Gilbert* decision or our decision in *Flores* that would lead to the conclusion suggested by Juiel. Rather, it is clear we cited *Gilbert* for the simple proposition that if a party receives benefits under a contract, the party is then estopped from denying the enforceability of the contract. *See id.* It matters not whether the arbitration provision is or is not a precondition to admission — there is nothing in *Flores* to suggest this formed part of

our decision. Rather, we simply held that because Bertha received benefits pursuant to an agreement — a single, unified document including both the admission agreement and the arbitration agreement — she and those acting on her behalf were estopped from denying the other terms of that agreement, including the arbitration provision. *Id.*

Juiel also contends direct-benefits estoppel theory is inapplicable because it did not assert claims pursuant to the arbitration or admission agreement. Rather, the claims brought are health care liability claims arising "from general obligations imposed by law." Juiel's argument has been foreclosed by the supreme court's decision in *Weekley Homes, L.P.*

In *Weekley Homes*, the supreme court determined a nonsignatory can be compelled to arbitrate if he "deliberately seeks and obtains substantial benefits from the contract itself." 180 S.W.3d at 132–33. The determination of whether a nonsignatory can be compelled to arbitrate does not turn upon whether he is bringing suit to enforce the contract containing the arbitration provision. *Id.* Rather, it turns upon whether the party seeking to avoid arbitration derived a benefit from the contract during its performance. *Id.* As the court stated in *Weekley Homes*, although the nonsignatory's personal injury claim was not based upon the contract that included the arbitration provision, her prior exercise of other rights under the contract and her derivation of benefits thereunder prevented her from avoiding the effects of the arbitration provision in that contract. *Id.* at 135.

The same is true here — although Juiel's medical liability claims are based on negligence, not on any alleged breach of the admission agreement, because Bertha derived benefits under the admission agreement — of which the arbitration was part, *see Laibe Corp.*, 307 S.W.3d at 317 — Juiel is prevented from avoiding the effects of the arbitration. *See Weekley*, 180 S.W.3d at 132–33. Accordingly, the fact that Juiel brought a negligence claim as opposed to a breach of contract claim does not preclude application of the direct-benefits estoppel theory.

Finally, Juiel contends Casa Rio may not rely on the theory of direct-benefits estoppel in this court because it failed to assert the theory in the trial court. Generally, a party may not raise an argument on appeal that has not been previously presented in the trial court. *See, e.g., Federal Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 604 (Tex. 2012); *Allright, Inc. v. Pearson*, 735 S.W.2d 240, 240 (Tex. 1987). However, based on our decision in *Flores*, we hold Casa Rio did not waive its right to assert the theory of direct-benefits estoppel. *See Flores*, 2015 WL 5157034, at *4.

In *Flores*, as here, the appellee claimed Casa Rio was not entitled to rely on estoppel because it did not raise the theory in the trial court. *Id.* We began by noting that Casa Rio argued the arbitration agreement was valid and binding, and therefore, it had no reason to assert the theory of direct-benefits estoppel. *Id.* It was only when Mr. Flores asserted the invalidity of the arbitration agreement based on the absence of authority that estoppel came into play. *Id.*

At the hearing on the motion to compel, in response to Mr. Flores's lack of authority argument, Casa Rio argued:

> Finally Judge, I would like to address the authority issue. *I simply think it is disingenuous to say that Mr. Flores was able to sign these admission agreements on behalf of his wife, but now he's not subject to them on behalf of her estate. You know, what's good for the goose is good for the gander. You know, he signed the arbitration agreement along with all the other resident admission agreements that said that, you know, I'm signing this on behalf of her, as her responsible party. He's now brought this lawsuit on behalf of her estate for her. These are not individual claims. Because of that, there's a corollary there and those must—the arbitration agreement must be enforceable against that estate, Judge.* It would be a different question if he was bringing claims on his own. That's not a question before you, and I believe that arbitration agreement is binding because of that.

*Id.* (emphasis added). Thereafter, Casa Rio filed a letter brief in the trial court referencing "equitable estoppel" and more fully developing the estoppel theory. *Id.* Based on the argument and the letter, we held the theory of direct-benefits estoppel was before the trial court. *Id.*

In this case, Casa Rio argued the arbitration agreement was valid and binding. In response, Juiel claimed the agreement was not enforceable because Casa Rio failed to show Anna Juiel had

actual or apparent authority to sign the arbitration agreement on Bertha's behalf. At the hearing on the motion to compel, Casa Rio argued:

> [T]here are cases out there, Judge, that hold that a nonsignatory, even outside the basis of actual or apparent authority, can be held bound by an arbitration agreement.
>
> There are cases in the health and in nursing home facility context that state that. I would be happy to provide a letter brief to the Court by this afternoon to address those issues and cite those cases. I think that's what we have here.
>
> It's a simple premise. *What's good for the good is good for the gander. You can't come into a healthcare facility and say, [w]e want these services, I'm signing on behalf of my mother; and then when the facility tries to enforce that arbitration agreement, come back and say, no, wait a second, no we really didn't sign that — we didn't really mean that.*

Admittedly, Casa Rio did not follow the oral argument with a letter brief to the trial court. However, we find this is of no moment with regard to waiver given that the trial court specifically acknowledged during the hearing that it recognized that nonsignatories can be bound to the terms of an arbitration agreement.

Based on the exchanges during argument at the hearing on the motion to compel, we hold the theory of direct-benefits estoppel was brought to the attention of the trial court, thereby preserving it for our review. *See id.*; *see also* TEX. R. APP. P. 33.1(a)(1); *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 829 (Tex. 2012) (holding that preservation inquiry focuses on trial court's awareness of, and opportunity to remedy, the problem); *Eagle Fabricators, Inc. v. Rakowitz*, 344 S.W.3d 414, 423 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (holding that to preserve error, party must make trial court aware of complaint and obtain ruling).

## CONCLUSION

Based on the foregoing, we hold: (1) the provisions of the TMLA relating to arbitration were not enacted for the purpose of regulating the business of insurance, and therefore, such provisions are preempted by the FAA, *see Perez*, 461 S.W.3d at 528; (2) Casa Rio preserved its

direct-benefits estoppel claim for appeal, *see Flores*, 2015 WL 5157934, at *4; and (3) Bertha's claims are subject to arbitration under the theory of direct-benefits estoppel because we read the admission agreement and arbitration agreement as a unified instrument, and she obtained substantial and direct benefits from the admission agreement through the services provided by Casa Rio. *See id.* at *5. Accordingly, we sustain Casa Rio's issues, reverse the trial court's order denying the motion to compel, render judgment granting the motion to compel, and remand this matter for further proceedings consistent with this court's opinion, including the grant of an appropriate stay. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.025(a) (West 2011).

Marialyn Barnard, Justice