HARRIS COUNTY FLOOD CONTROL DISTRICT, Appellant,

v.

Doyle and Wanda ADAM, as Representatives of a Class of Individuals and/or Entities Similarly Situated, Appellees.

No. 14–00–00595–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 16, 2001.

Rehearing Overruled Oct. 25, 2001.

---

Sandra D. Hachem, Houston, for appellant.

Dennis Reich, Charles Musslewhite, Linda Laurent, Houston, for appellees.

Panel consists of Justices EDELMAN, FROST, and MURPHY.*

## OPINION

EDELMAN, Justice.

In this interlocutory appeal,[1] the Harris County Flood Control District (the "District") challenges the denial of its plea to the jurisdiction on the ground that the

facts alleged cannot form the basis of a claim for inverse condemnation. We affirm.

## Background

Appellees are representatives of an uncertified class of residential property owners in Harris and Brazoria Counties whose properties were allegedly damaged by a flood in 1994. Appellees claim that the manner in which the District supervised and approved the design (the "design") of Beltway 8 and its drainage system [2] caused more severe flooding to properties owned by class members than would have otherwise occurred.[3] The District filed a plea to the jurisdiction, which was denied by the trial court.

## Standard of Review

A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action based on lack of subject matter jurisdiction without regard to the merits of the claim. *Bland ISD v. Blue,* 34 S.W.3d 547, 554 (Tex.2000). Accordingly, while the underlying claims may form the context in which a plea to the jurisdiction is raised, the purpose of the plea is not to preview or delve into the merits of the case, but to establish a reason why the merits of the underlying claims should never be reached.[4] *Id.; see*

---

* Senior Chief Justice Paul C. Murphy sitting by assignment.

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2001) (generally allowing interlocutory appeal of an order granting or denying a plea to the jurisdiction by a governmental unit).

2. For purposes of this opinion, Beltway 8 and its drainage system will simply be referred to as "Beltway 8."

3. In particular, appellees allege that Beltway 8 blocked the natural runoff of rainwater across the flood plain, increasing the volume

and velocity of rainwater flowing into Clear Creek.

4. To determine whether jurisdiction exists, the court is not required to look solely at the pleadings, but may also consider evidence to prove the jurisdictional issues raised. *TNRCC v. White,* 46 S.W.3d 864, 868 (Tex.2001); *Bland ISD,* 34 S.W.3d at 555. However, the court should confine itself to the evidence relevant to the jurisdictional issues. *TNRCC,* 46 S.W.3d at 868. Further, whether a determination of subject-matter jurisdiction can be made in a preliminary hearing or should await a fuller development of the merits of the

*Gen. Servs. Com'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex.2001) (dismissing purported "taking" claims for lack of jurisdiction because, in withholding property in a contract dispute, the State was acting under colorable contractual rights rather than eminent domain power, and thus lacked the intent necessary to establish a taking claim).

### Plea to the Jurisdiction

In its sole issue, the District contends that the trial court erred in denying its plea to the jurisdiction because the facts appellees allege against it do not constitute an inverse condemnation. In particular, the District argues that: (1) it lacked authority to exert control over the design of Beltway 8; and (2) the acts appellees allege cannot be characterized as intentional for purposes of an inverse condemnation claim. The District thus asserts that because the facts alleged cannot render it liable for inverse condemnation, the doctrine of sovereign immunity protects it from suit.

 The "taking" clause of the Texas Constitution states that "[n]o person's property shall be taken, damaged or de-stroyed for or applied to public use without adequate compensation being made...." Tex. Const. art. I, § 17. An inverse condemnation or "taking" action is thus available to compensate a property owner for a loss resulting when his property has been taken or damaged for public use without compensation or a condemnation proceeding. *Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex.1992). Such an inverse condemnation may occur not only when the

State or its agency physically takes or invades property, but also when it unreasonably interferes with the property owner's right to use and enjoy his property. *Id.* Therefore, to establish a taking claim, a plaintiff must plead and prove that: (1) the State intentionally performed certain acts; (2) that resulted in a "taking" of property; (3) for public use. *Gen. Servs. Com'n*, 39 S.W.3d at 598. Whether particular facts are enough to constitute a taking is a question of law. *Id.*

In this case, the District asserts that regardless whether it *actually* supervised any aspect of the Beltway 8 project, none of the provisions in the legislation creating it give it the power or authority to control the Texas Department of Transportation's ("TxDOT") decisions on the construction or design of such highway projects. The District similarly contends that it cannot be liable for TxDOT's ultimate decisions on the design of Beltway 8 because TxDOT was not required to submit its plans for that design to the District for approval. The District thus argues that even though Beltway 8 was constructed for public use, the *District's* involvement in the project cannot be a taking for public use because the law does not give the District the right to use public property for that purpose.

 We are not persuaded that if the District actually *exercised* any control over the design of Beltway 8 which resulted in an intentional taking of appellees' property for public use without compensation, then it can escape liability to appellees on the ground that the control it exercised exceeded its statutory authority.[5] Rather, we interpret the Texas Constitution to pro-

---

case must be left largely to the trial court's discretion. *Bland ISD*, 34 S.W.3d at 554.

**5.** *See, e.g., Barto Watson, Inc. v. City of Houston*, 998 S.W.2d 637, 641–42 (Tex.App.—Houston [1st Dist.] 1999, pet. denied) (hold-

ing that the city was liable for inverse condemnation when a city inspector exceeded his authority by improperly enforcing a permit requirement which required the plaintiff to shut down his business).

tect citizens against takings by the State, whether authorized or not. Moreover, because a taking can technically be authorized only if compensation has been provided or other procedural steps followed, any taking which requires an inverse condemnation action to rectify is, by its nature, unauthorized. Because we can thus find no law or rationale to support it, we decline to hold that the District's claim of lack of authority is a valid basis upon which to find no jurisdiction over appellees' taking claim.

However, even if lack of authority precludes jurisdiction over a taking claim, the District has not established in this case that it lacked authority to exercise any control over the design of Beltway 8 and thereby take property for public use. The District was created as a governmental agency "with the powers of government and with the authority to exercise [its] rights," which include the "control, . . . and distribution of the storm and flood waters, . . . for domestic, municipal, flood-control . . ., [and] the reclamation and drainage of the overflow land of Harris County. . . ." Tex. Water Aux. Laws art. 8280–120 (Vernon 2001). More specifically, among other things, the District is authorized to: (1) acquire property needed to carry on the work of flood control by condemnation; (2) devise plans and construct works to lessen and control floods, regulate the flow of surface and flood waters, and provide drainage where essential to a flood control project; (3) cooperate or contract with any agency of the State in regard to surveys, the acquisition of land or right of ways, and the construction or maintenance of projects which affect flood control in Harris County; (4) generally have a right of way and easement over and across the roads and highways of the State and its subdivisions for the construction and maintenance of the flood control projects of the District; and (5) overflow or inundate any public lands and public property, and to require the relocation of roads and highways, in the manner and to the extent permitted under the Constitution. *Id.* In light of the foregoing provisions and the absence of any law to the contrary, we find no support for the District's contention that it lacked authority to control any ultimate decisions on the design of Beltway 8 and to thereby take property for public use. Accordingly, that contention is overruled.[6]

▮▮▮▮▮ The District's final argument is that the acts appellees allege the District performed can constitute, at most, negligence, and thus not an intentional taking. To be compensated as a taking, a damage must not result from mere negligence. *Steele v. City of Houston*, 603 S.W.2d 786, 790 (Tex.1980). An invasion[7] is considered intentional rather than negligent when the State acts for the purpose of causing the invasion or knows that it is substantially certain to result from its conduct. *City of Houston v. Renault, Inc.*, 431 S.W.2d 322, 325 (Tex.1968) (holding that an unintentional flooding of an auto storage lot caused by the city's mainte-

---

6. *Cf. Kite v. City of Westworth Village*, 853 S.W.2d 200, 201 (Tex.App.—Fort Worth 1993, writ denied) (holding that a party may recover compensation from a municipality whose approval of a plat necessarily results in a diversion of water from its natural course so as to constitute a taking of property for public use without the consent of the owner of the property).

7. In this case, the "invasion" refers to an increase in surface waters upon appellees' properties. *See Hubler v. City of Corpus Christi*, 564 S.W.2d 816, 821 (Tex.App.—Corpus Christi 1978, writ ref'd n.r.e.) (construing an allegation of a physical invasion onto land caused by a project as an alleged intentional increase of surface waters over plaintiff's property).

nance of a road was not an intentional taking).

■ In this case, appellees' ninth amended petition alleges that the District "committed intentional acts in the ... approval of Beltway 8 and its impact on drainage on Clear Creek which have resulted in an invasion of and/or an interference with [appellees'] property, and these acts constitute a taking, damaging and/or destroying of [appellees'] property for application to public use without adequate compensation...." To the extent this language alleges that the District exercised control over the design of Beltway 8 with knowledge that its decisions would likely result in more severe flooding conditions than would otherwise occur, it alleges facts that could constitute an intentional taking. Conversely, if it is an allegation only that more severe flooding conditions happened to result from the District's involvement in the design of Beltway 8, but without the District being aware of that likelihood and/or despite its efforts to prevent it, then the petition does not allege an intentional taking. However, even in the latter event, a plea to the jurisdiction could not have properly been sustained for failure to state a cause of action without first giving appellees an opportunity to replead. *See Bybee v. Fireman's Fund Ins. Co.,* 160 Tex. 429, 331 S.W.2d 910, 917 (1960). Thus, in whichever way the pleadings were construed by the trial court,[8] dismissal for lack of jurisdiction was not warranted yet, if at all. Accordingly, the District's issue

has failed to demonstrate that the trial court erred in denying its plea to the jurisdiction, the District's sole issue is overruled, and the judgment of the trial court is affirmed.[9]

---

8. Obviously, any uncertainty in this regard can be resolved in the trial court by way of special exceptions. Although our record suggests that special exceptions have been filed in this case, it does not reflect their content or the trial court's ruling, if any, on them. Moreover, a trial court's rulings on special exceptions are not subject to review by interlocutory appeal. *McCamey v. Kinnear,* 484 S.W.2d 150, 153 (Tex.App.—Beaumont 1972,

writ ref'd n.r.e.); *see* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a) (Vernon 1997).

9. Although it does not bear on our decision, we note that the First Court of Appeals recently reversed the granting of a plea to the jurisdiction in a similar lawsuit. *See Kerr v. Texas Dept. of Transp.,* 45 S.W.3d 248 (Tex. App.—Houston [1st Dist.] 2001, pet. filed).