

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00171-CV
No. 02-20-00214-CV

———————————————

V3 CONSTRUCTION COMPANY, LLC, Appellant

V.

JOHN WALTER BUTLER, Appellee

---

On Appeal from the 17th District Court
Tarrant County, Texas
Trial Court No. 017-314610-20

---

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Each of these two interlocutory appeals challenges a separate order denying arbitration. With Cause No. 02-20-00171-CV (the first appeal), Appellant V3 Construction Company, LLC (V3) appeals from the trial court's order (first order) denying V3's amended, supplemented motion to compel arbitration (first motion). With Cause No. 02-20-00214-CV (the second appeal), V3 appeals from the trial court's order (second order) denying V3's combined second amended motion to compel arbitration and motion for reconsideration (second motion). We hold that the trial court did not abuse its discretion by denying arbitration, but we lack jurisdiction to address an interlocutory appeal from an order denying a motion for reconsideration. We therefore affirm the trial court's first order denying arbitration in the first appeal. In the second appeal, we affirm that portion of the second order denying arbitration, and we dismiss that portion of the second appeal challenging the trial court's denial of reconsideration of its first order denying arbitration.

## I. Background

This is a personal injury lawsuit arising from a construction site injury. V3 is one of the defendants below. Appellee John Walter Butler is the plaintiff below. In his petition, Butler alleged:

1.   He was an employee of a nonparty, Alpha Testing (Alpha).

2.   He was lawfully on the jobsite to check the status of the construction.

3.   The jobsite was "controlled" by the "defendants."

4.      He fell from a scaffold provided by the defendants.

5.      The defendants had been negligent in erecting and securing the scaffolding, in failing to provide safety harnesses or other safety equipment to ensure that he would not fall, and in failing to warn him of the unsecured scaffolding.

6.      These negligent acts proximately caused the occurrence and his injuries.

Butler's petition did not reference the source of the defendants' alleged control of the premises or equipment.

V3 answered with a general denial, various affirmative defenses, and a cross-claim against a co-defendant. V3 later filed its first motion to compel arbitration, alleging that it had a contract (Contract) with Alpha to test construction materials on the construction project and that the Contract contained an arbitration clause governing

> [a]ll claims, disputes, controversies or matters in question arising out of or relating to this Agreement or any breach thereof, including but not limited to disputes arising out of alleged design defects, breaches of contract, errors, omissions, or acts of professional negligence.

V3 contended that Butler, a nonsignatory, could nevertheless be compelled to arbitrate under the Contract under an agency theory, to wit,

> Here, V3 and Alpha were signatories to the arbitration agreement contained in the [C]ontract. Butler, a nonsignatory to the arbitration agreement, was subject to Alpha's control as its employee and was authorized to act as Alpha's agent. Butler was authorized to act on behalf of Alpha in performing the scope of work under the [C]ontract on the day of the incident in question. Therefore, Butler can be compelled to arbitrate under an agency theory.

Butler denied that Alpha had any authority to bind him to the Contract and contended that no other legal principles granted Alpha such authority.[1]

V3 then filed its "First Supplement to Amended Motion to Compel Arbitration and Reply to Plaintiff's Response to its Amended Motion to Compel." In addition to other matters not pertinent here, V3 still relied upon its agency theory to bind Butler to the arbitration agreement and specifically stated that it was not relying on direct benefits estoppel. V3 did not mention intertwined claims estoppel in its document. Butler filed a response, and after a hearing, the trial court denied V3's first motion to compel arbitration.

Soon thereafter, V3 filed both its second motion and its special exceptions to Butler's first amended petition. Shortly after filing its second motion and special exceptions, V3 filed its first appeal.

V3's second motion asked for reconsideration, again asserting agency as a basis for compelling arbitration. However, the second motion added direct benefits estoppel and intertwined claims estoppel as "new" grounds for compelling arbitration. In support of its direct benefits estoppel theory, V3 argued that it potentially had a duty of ordinary care to Butler only by virtue of its Contract with Alpha, which expressly allocated responsibility for jobsite safety to V3; that his presence on the

---

[1]It is uncontested that Butler was: 1) Alpha's employee, 2) inspecting construction materials as Alpha's employee, 3) while lawfully on the jobsite's premises, 4) at the time of his injury.

jobsite was justified solely by the Contract; and that without the Contract, he would have been a trespasser to whom no duty of ordinary care would have been owed. In short, V3 contended that Butler's claims could not stand without reliance on the Contract and therefor he should be bound to all its terms, including arbitration.

In V3's special exceptions, it claimed that Butler's allegations of control in his first amended petition failed to set forth facts supporting the allegation, leaving the basis of the allegation unclear and not giving fair notice of the claim as required by Rule 47 of the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 47. V3 asked that Butler be required to replead to cure the alleged pleading defect.

Butler responded to the second motion and the special exceptions. In his response to the second motion, he reasserted his prior arguments against agency; raised the case of *ENGlobal U.S., Inc. v. Gatlin*, 449 S.W.3d 269, 272–73 (Tex. App.—Beaumont 2014, no pet.) (discussed below), in response to the claim of direct benefits estoppel; and contested the applicability of intertwined claims estoppel because this theory requires that the party against whom the contract is sought to be enforced be a signatory—Butler is not. Butler also responded to V3's special exceptions, contending that his amended petition provided fair notice under the Texas Rules of Civil Procedure.

After conducting a hearing on the second motion, special exceptions, and responses thereto, the trial court denied the second motion and the special exceptions. V3 appealed from the denial of its second motion, and this court granted V3's motion

5

to consolidate the two appeals over Butler's objection. Butler filed a motion to dismiss the second appeal.

## II. Discussion

### A. Jurisdiction

We first address Butler's motion to dismiss V3's second appeal, the appeal from the trial court's denial of V3's second motion, as well as his arguments for dismissal raised in his brief's third counter-issue.[2] Butler contends that we lack jurisdiction to entertain the second appeal because the second motion was a motion for reconsideration, the denial of which is not an appealable interlocutory order. However, the second motion was both a motion for reconsideration and a motion to compel arbitration raising new grounds. We therefore grant Butler's dismissal motion in part and deny it in part.

Appellate courts have jurisdiction to consider appeals of interlocutory orders only where a statute provides such jurisdiction. *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007). As noted by this court in *Brand FX, LLC v. Rhine*,

> Interlocutory orders may be appealed only if permitted by statute and only to the extent jurisdiction is conferred by statute. We strictly construe statutes authorizing interlocutory appeals because they are a narrow exception to the general rule that interlocutory orders are not

---

[2]Counter-issues, or counterpoints, "assist the appellate court in finding the answers given to the points of the appellant. From the standpoint of the advocate, their function is to show that the point or points of the opposite party are not valid." *Jackson v. Ewton*, 411 S.W.2d 715, 717 (Tex. 1967); *see also Dudley Constr., Ltd. v. Act Pipe & Supply, Inc.*, 545 S.W.3d 532, 538 (Tex. 2018) (quoting same).

immediately appealable. Under both the FAA and the TAA, the denial of a motion to compel arbitration is immediately appealable, but the denial of a motion to reconsider the denial of a motion to compel arbitration is not immediately appealable.

458 S.W.3d 195, 201 (Tex. App.—Fort Worth 2015, no pet.) (citations omitted). Where a motion to reconsider is combined with an amended motion to compel adding new substantive issues, it is not merely a request to reconsider a previous motion already denied, and the order addressing the new matters is subject to interlocutory appeal. *Lucchese, Inc. v. Solano*, 388 S.W.3d 343, 348–49 (Tex. App.—El Paso 2012, no pet.). Where, however, a motion to reconsider combined with an amended motion to compel arbitration is, in substance, nothing but a motion to reconsider a previously denied motion to compel arbitration, the order is not subject to interlocutory appeal. *Brand FX*, 458 S.W.3d at 203; *Wells Fargo Bank, N.A. v. Goldberg*, No. 09-10-00386-CV, 2011 WL 662952, at *2 (Tex. App.—Beaumont Feb. 24, 2011, no pet.) (mem. op.); *Nabors Well Servs. Co. v. Aviles*, No. 06-10-00018-CV, 2010 WL 2680087, at *2 (Tex. App.—Texarkana July 7, 2010, no pet.) (mem. op.); *Hydro Mgmt. Sys., LLC v. Jalin, Ltd.*, No. 04-09-00813-CV, 2010 WL 1817813, at *1 (Tex. App.—San Antonio May 5, 2010, no pet.) (per curiam) (mem. op.).

Butler maintains that the second motion was nothing more than an effort by V3 to convince the trial court to reconsider V3's first motion previously overruled by the trial court. We disagree in part. Although V3 did employ its second motion to seek reconsideration of the only arbitration ground it raised in the first motion—agency—

7

V3 also raised two arbitration grounds for the first time in the second motion: direct benefits estoppel and intertwined claims estoppel. Butler argues in his dismissal motion (but not in his later filed brief) that the trial court had already considered direct benefits estoppel before denying the first motion. Although Butler raised arguments against the application of direct benefits estoppel in his response to the first motion, V3 had not raised direct benefits estoppel as a ground for referral to arbitration in its first motion and expressly disavowed reliance on that ground in the hearing on the first motion. Neither party mentioned the ground of intertwined claims estoppel in the first motion, the response to it, or the first hearing. We therefore hold that V3's second motion raised new substantive matters not raised by V3 as grounds for referral to arbitration in the first motion, i.e., direct benefits estoppel and intertwined claims estoppel. As to those matters, we have jurisdiction of V3's second appeal. *See Branch Law Firm L.L.P. v. Osborn*, 532 S.W.3d 1, 11–12 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

However, as to matters regarding agency addressed in the second motion, that issue was directly before the court in the first motion. The trial court's ruling on agency in the second order was therefore substantively an order denying reconsideration and is not appealable. *See Brand FX*, 458 S.W.3d at 203.

We therefore grant Butler's motion to dismiss in part and deny it in part. We dismiss that portion of the second appeal challenging the trial court's denial of reconsideration of its first order denying arbitration; we grant Butler's dismissal

8

motion to the extent it seeks that relief. We deny the remainder of Butler's dismissal motion.

The partial dismissal of the second appeal has no practical effect, however, because the first appeal addresses the issue of agency. Therefore, all three grounds V3 raised in the trial court to bind Butler to arbitration—agency, direct benefits estoppel, and intertwined claims estoppel—are properly before this court in these consolidated appeals.

## B. Arbitration

### 1. Standard of Review

We review the denial of a motion to compel arbitration for an abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018); *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009) (orig. proceeding); *Brand FX*, 458 S.W.3d at 203. In our review, we defer to the trial court's factual determinations that are supported by evidence, but we review the trial court's legal determinations de novo. *Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013). We review de novo whether an arbitration agreement is enforceable against a nonsignatory. *See id.*

### 2. Arbitration Requirements

Arbitration cannot be ordered in the absence of an agreement to arbitrate. *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994) (orig. proceeding) (per curiam). Therefore, despite strong presumptions that favor arbitration, a valid agreement to arbitrate is a settled, threshold requirement to compel arbitration. *See In re Kellogg Brown & Root, Inc.*,

9

166 S.W.3d 732, 737–38 (Tex. 2005) (orig. proceeding). Generally, parties must sign arbitration agreements before being bound by them. *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (orig. proceeding). "Arbitration agreements apply to nonsignatories only in rare circumstances . . . ." *Id.* (quoting *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 358 (5th Cir. 2003)); *see also Telsmith, Inc. v. 37 Bldg. Prods., Ltd.*, No. 02-19-00220-CV, 2020 WL 719445, at *2 (Tex. App.—Fort Worth Feb. 13, 2020, no pet.) (mem. op.).

Whether an arbitration agreement binds a nonsignatory is a gateway issue to be determined by the court rather than the arbitrator. *Jody James Farms v. Altman Grp., Inc.*, 547 S.W.3d 624, 629 (Tex. 2018). The party seeking arbitration bears the burden of establishing that the arbitration agreement binds a nonsignatory. *Telsmith*, 2020 WL 719445, at *2; *Cardon Healthcare Network, Inc. v. Goldberg*, No. 03-17-00474-CV, 2018 WL 1124500, at *2 (Tex. App.—Austin Mar. 2, 2018, no pet.) (mem. op.); *Glassell Producing Co. v. Jared Res., Ltd.*, 422 S.W.3d 68, 81 (Tex. App.—Texarkana 2014, no pet.) (op. on reh'g). We apply Texas procedural rules and substantive law in determining whether nonsignatories are bound by an arbitration agreement. *Jody James Farms*, 547 S.W.3d at 629; *Labatt Food Serv.*, 279 S.W.3d at 643; *Telsmith*, 2020 WL 719445, at *2.

It is uncontested that Butler was not a signatory to the arbitration agreement between V3 and Alpha, Butler's employer. Assuming he is bound by the arbitration agreement, there is no issue regarding the existence of the agreement, whether the

10

claim is within the scope of the agreement, or whether the claim is arbitrable. Therefore, the only issue for us to decide is whether Butler is bound by the arbitration agreement between V3 and his employer, Alpha.

### 3. Analysis

V3 asserts three legal bases on which to bind Butler to the arbitration agreement: agency, direct benefits estoppel, and intertwined claims estoppel. We will review each in the order raised by V3 in its brief.

### a. Agency

First, V3 contends that Butler is bound to the arbitration agreement under the principles of agency. V3 contends Butler is bound under agency and contract law because Alpha could only act through human agents like Butler who was (i) an employee-servant of Alpha, (ii) on the jobsite by virtue of being Alpha's agent, and (iii) performing Alpha's duties under the Contract, which resulted in his injuries. Alpha, as Butler's employer, assigned, directed, and controlled Butler's conduct in connection with the performance of Alpha's duties under the Contract. In support of its argument, V3 relies upon *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 762 (Tex. 2006) (orig. proceeding) (per curiam). *Vesta* involved a suit by a former insurance agent against the signatory principal insurance company's parent corporation, its officers, and its agents for tortious interference with the agency agreement between the agent and the insurance company principal. The agent did not sue the insurance company principal with whom he had the arbitration agreement. The defendants were

11

nonsignatories to the arbitration agreement but sought to compel arbitration under the agreement.

While the *Vesta* court did hold that arbitration should have been compelled in favor of the nonsignatories, including the agents, *id.* at 763, V3 reads *Vesta* too broadly, i.e., that employees and agents of corporate entities who are parties to an arbitration agreement can be compelled to arbitrate under such agreements simply by virtue of their agency relationship. Under traditional agency principles, absent consent of the agent, the only other way that an agent can be bound to the terms of a corporation's contract is if the corporation acts on behalf of the agent with actual, implied, or apparent authority. *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 318–19 (5th Cir. 2011). Applying this principle, the *DK Joint Venture* court held that two corporate agents who signed a contract as corporate representatives were not bound by the contract's arbitration clause merely because of their agency/employment status and there was no evidence in the record that the corporation had actual, implied, or apparent authority to act on their behalf to bind them. *Id.* at 317–19. In so holding, the court rejected the application of *Vesta*, stating, "'*Vesta* stands for the proposition that a signatory plaintiff cannot avoid its agreement to arbitrate disputes simply by bringing . . . claims against the (nonsignatory) officers, agents, or affiliates of the other signatory to the contract.'" *Id.* at 317 (quoting *Roe v. Ladymon*, 318 S.W.3d 502, 520 (Tex. App.—Dallas 2010, no pet.)). *DK Joint Venture* and *Roe* both hold that "'it matters whether the party resisting arbitration is a signatory or not.'" *Elgohary v.*

12

*Herrera*, 405 S.W.3d 785, 791–92 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (quoting *DK Joint Venture*, 649 F.3d at 317); *see Roe*, 318 S.W.3d at 520–21. "*If the party resisting arbitration is not a signatory to the contract, his status as an agent of the signatory entity will not bind him to the arbitration provision.*" *Elgohary*, 405 S.W.3d at 791 (emphasis added) (citing *DK Joint Venture*, 649 F.3d at 317); *see also Medinet Invs., LLC v. English*, No. 05-17-00179-CV, 2018 WL 1602525, at *3 (Tex. App.—Dallas Apr. 3, 2018, pet. denied) (mem. op.) (holding corporate agent who signed arbitration agreement in representative capacity was not bound to arbitrate).

In this case, we agree with Butler that his alleged status as an employee or agent of Alpha does not bind him to the arbitration agreement between Alpha and V3. Further, V3 has brought forward no evidence that Alpha had actual, implied, or apparent authority to bind Butler to the arbitration agreement. Therefore, we reject agency as a basis to bind Butler to the arbitration agreement.

### b. Direct Benefits Estoppel

Next, we will examine the applicability of direct benefits estoppel. This theory was summarized by the Texas Supreme Court in *Jody James Farms*:

> Direct[]benefits estoppel applies to parties who seek "to derive a direct benefit" from a contract with an arbitration agreement. This estoppel theory precludes a plaintiff from seeking to hold the non[]signatory liable based on the terms of an agreement that contains an arbitration provision while simultaneously asserting the provision lacks force because the defendant is a non[]signatory. Simply put, a person "cannot both have his contract and defeat it too." When a claim depends on the contract's existence and cannot stand independently—that is, the alleged liability "arises *solely* from the contract or must be determined by

13

reference to it"—equity prevents a person from avoiding the arbitration clause that was part of that agreement. But "when the substance of the claim arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law," direct[]benefits estoppel is not implicated even if the claim refers to or relates to the contract or would not have arisen "but for" the contract's existence.

547 S.W.3d at 637 (emphasis added) (citations omitted).

In this case, V3 contends that Butler's only reason for being on the property was as an employee of Alpha, a subcontractor to the general contractor V3. Alpha's only rights to be on the property derived from the Contract with V3. Therefore, V3's duties to Butler derived solely from the Contract with Alpha, and Butler would have been a trespasser but for his permission to be on the property as an employee of Alpha. V3 concludes that if Butler had been a trespasser, V3 would not have owed him a duty of ordinary care. In other words, V3 asserts that Butler's claim can arise only by virtue of the Contract and cannot exist without reference to it. We reject V3's position.

The only analogous Texas case is *ENGlobal,* 449 S.W.3d at 272–73. There, Phillips 66 owned a refinery and contracted with Gatlin's employer, a cleaning service contractor. Concurrently, Phillips 66 contracted with ENGlobal for engineering and construction services at the refinery; that contract included a broad arbitration clause similar to the one in this case. Gatlin was not a signatory to that contract. Gatlin was injured on the job at the refinery and sued Phillips 66, its predecessor ConocoPhillips, and ENGlobal under theories of premises liability and negligent undertaking.

ENGlobal moved to compel Gatlin to arbitration under its contract with Phillips 66, contending that Gatlin was bound to the contract's arbitration clause under the doctrine of direct benefits estoppel. *Id.* at 272.

The court noted that one ground for applying the direct benefits estoppel theory is that the nonsignatory received a direct benefit from the contract other than by means of a lawsuit. *Id.* at 275. "Under this application of the doctrine, a non[]signatory may be compelled to arbitrate if he or she deliberately seeks and obtains substantial benefits from the contract during the performance of the agreement." *Id.* (citing *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005) (orig. proceeding)). Similar to V3's argument here, ENGlobal argued that but for the Phillips contract, ENGlobal would not have been on the premises and would presumably not have created the allegedly dangerous condition. However, the court rejected this argument, holding that such does not rise to a receipt of a direct benefit. *Id.* at 280.

V3's argument is essentially the same as ENGlobal's; i.e., that but for the Contract, Butler would not have been on the jobsite and V3 would not have owed him an alleged duty of ordinary care. As the *ENGlobal* court held, that type of "but for" reasoning is insufficient to constitute a "direct benefit." *Id.*; *see also Kellogg Brown & Root*, 166 S.W.3d at 740 (holding a nonsignatory plaintiff cannot be compelled to arbitrate on the sole ground that, but for the contract containing the arbitration clause, the nonsignatory would have no basis to sue); *see also Lincoln Fin. Advisors Corp.*

15

*v. Ards ex rel. Ards*, No. 03-18-00437-CV, 2019 WL 6907074, at *8 (Tex. App.—Austin Dec. 19, 2019, no pet.) (mem. op.) (citing *Kellogg Brown & Root*, 166 S.W.3d at 740).

V3 also contends that Butler is bound under direct benefits estoppel by virtue of his claims in this lawsuit. As noted by the court in *ENGlobal*,

> A non[]signatory sues "based on a contract" when he or she "seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provision." *Kellogg Brown & Root*, 166 S.W.3d at 741. "(W)hether a claim seeks a direct benefit from a contract containing an arbitration clause turns on the substance of the claim, not artful pleading." *Weekley Homes*, 180 S.W.3d at 131–32. A claim seeks a direct benefit from a contract, and arbitration can be compelled, if liability under the claim "arises *solely* from the contract or must be determined by reference to it." *Id.* at 132; *see also Kellogg Brown & Root*, 166 S.W.3d at 739 ("(A) non[]signatory plaintiff may be compelled to arbitrate if it seeks to enforce terms of a contract containing an arbitration provision."). By contrast, *a claim does not seek a direct benefit from a contract, and arbitration cannot be compelled, if liability under the claim "arises from general obligations imposed by state law, including statutes, torts and other common law duties*, or federal law." *In re Morgan Stanley & Co., Inc.*, 293 S.W.3d 182, 184 n.2 (Tex. 2009) [(orig. proceeding)]; *see also Kellogg Brown & Root*, 166 S.W.3d at 739–40 ("If, however, a non[]signatory's claims can stand independently of the underlying contract, then arbitration generally should not be compelled under (a direct benefits estoppel) theory.").

449 S.W.3d at 275 (emphasis added). Gatlin alleged that ENGlobal owed him a duty of care because ENGlobal: 1) was in control of the alleged premises defect when the accident occurred, 2) knew or should have known of the alleged defect, 3) failed to warn him of the defect or to eliminate the risk of harm, and 4) thereby proximately caused his injuries. *Id.* at 276. As noted by the *ENGlobal* court,

"Ordinarily(,) a person who does not own the real property must assume control over and responsibility for the premises before there will be liability for a dangerous condition existing on the real property." *City of Denton v. Page*, 701 S.W.2d 831, 835 (Tex. 1986). "It is possession and control which generally must be shown as a prerequisite to liability." *Id.*; *see also C[]ty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002) ("The relevant inquiry is whether the defendant assumed sufficient control over the part of the premises that presented the alleged danger so that the defendant had the responsibility to remedy it."). As such, an independent contractor on a work site, who assumes control over and responsibility for the premises, is charged with the same duty as an owner or possessor of the premises. *See Page*, 701 S.W.2d at 834; *Rendleman v. Clarke*, 909 S.W.2d 56, 60 (Tex. App.—Houston [14th Dist.] 1995, writ dism'd as moot)[ (op. on reh'g)]. *Control over the premises can be proven by a contractual agreement assigning a right of control or by evidence of actual control. See La China v. Woodlands Operating Co., L.P.*, 417 S.W.3d 516, 522 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

*Id.* at 276–77 (emphasis added).

The significance of the source of the duty is that a duty to use ordinary care based on state tort law would not support compelling arbitration. *Morgan Stanley*, 293 S.W.3d at 184 n.2. Based on Gatlin's pleadings, which made general allegations of control, the court held that ENGlobal failed to prove that Gatlin was solely relying on the Phillips–ENGlobal contract to establish a right of control and, therefore, failed to establish that Gatlin was relying on the contract to establish a contractual right to control as opposed to relying on an actual right to control. Such failure was fatal to ENGlobal's claim of direct benefits estoppel. *ENGlobal*, 449 S.W.3d at 277–78.

Similar reasoning applies here. Like Gatlin, Butler alleged that he was a person lawfully on the premises, employed by a nonparty, to check the status of the construction at the jobsite that was under the control of the defendants, including V3.

17

Butler further alleged that he fell from scaffolding that was negligently erected by the defendants and that the defendants failed to warn him and failed to provide him with safety equipment to ensure he would not fall. Butler's amended petition did not allege the source of the defendants' control, nor did it refer to any contractual duties of V3 under the Contract. Like ENGlobal, V3 did not establish that Butler's claims of control rested solely on the Contract. Therefore, the trial court did not abuse its discretion by denying V3's second motion to compel arbitration based on direct benefits estoppel.[3]

---

[3]V3 attempts to distinguish *ENGlobal* because V3 filed special exceptions to force Butler to amend his general allegations of control to specify the source of control; V3 alleges that the trial court improperly overruled its special exceptions. First, rulings on special exceptions are not subject to review on appeal before final judgment unless specifically authorized by statute. *Nguyen v. Aventus Ins. Co.*, No. 14-18-00720-CV, 2018 WL 5261141, at *1 (Tex. App.—Houston [14th Dist.] Oct. 23, 2018, no pet.) (per curiam) (mem. op.); *Harris Cty. Flood Control Dist. v. Adam*, 56 S.W.3d 665, 670 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd w.o.j.); *McCamey v. Kinnear*, 484 S.W.2d 150, 153 (Tex. App.—Beaumont 1972, writ ref'd n.r.e.). We dismiss V3's second issue.

Second, even if the court's special exception order here was subject to interlocutory review, orders on special exceptions are reviewable for an abuse of discretion. *De los Santos v. Comm'n for Lawyer Discipline*, 547 S.W.3d 640, 650 (Tex. App.—San Antonio 2017, pet. denied); *Fuentes v. McFadden*, 825 S.W.2d 772, 778 (Tex. App.—El Paso 1992, no writ). As the *De los Santos* court explained,

> A pleading must contain " . . . a short statement of [the] cause of action sufficient to give fair notice of the claim involved . . . ." Tex. R. Civ. P. 47. The test for determining whether a pleading gives adequate notice is whether "an opposing attorney of reasonable competence, with the pleadings before him, can ascertain the nature and the basic issues of the controversy and the testimony probably relevant," *Rodriguez v. Yenawine*, 556 S.W.2d 410, 414 (Tex. App.—Austin 1977, no writ); *Davis*

### c. Intertwined Claims Estoppel

Finally, V3 contends that Butler is bound to the arbitration agreement under the theory of intertwined claims estoppel, also known as "alternative estoppel." This theory, though referenced by Texas courts on several occasions, has never been adopted by our Supreme Court. *Jody James Farms*, 547 S.W.3d at 639; *see In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 193 (Tex. 2007) (orig. proceeding); N*atgasoline LLC v. Refractory Constr. Servs., Co. LLC*, 566 S.W.3d 871, 888 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). We need not decide whether this theory of estoppel exists in Texas because, assuming it does exist, it would not apply here. Under this theory, "*non*[]*signatories* can successfully compel arbitration when (1) they have a close relationship with a signatory to a contract with an arbitration agreement and (2) the claims are intimately founded in and intertwined with the underlying contract obligations." *Jody James Farms*, 547 S.W.3d at 639 (emphasis added) (internal quotation marks omitted) (citation omitted). Here, V3 is a signatory, so this theory does not apply. Further, the applicability of the "intertwined claims" theory requires more of a relationship than being "merely independent participants in a business transaction."

---

*v. Quality Pest Control*, 641 S.W.2d 324, 328 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.).

547 S.W.3d at 650. Since Butler's pleading met this low standard, even if we reached the merits of the issue, we would hold that the trial court did not abuse its discretion in overruling V3's exceptions, and we would overrule V3's second issue. Thus, V3's filing special exceptions does not distinguish this case from *ENGlobal.*

19

*Id.* at 640; *Natgasoline*, 566 S.W.3d at 888–89. In the present case, V3 and Butler are, at most, "merely independent participants in a business transaction." *Jody James Farms*, 547 S.W.3d at 640; *Natgasoline*, 566 S.W.3d at 888–89. Therefore, the trial court did not abuse its discretion in denying arbitration on this ground.

Having held that the trial court did not abuse its discretion by denying arbitration on any of the three grounds V3 asserted, we overrule V3's first issue.

## III. Conclusion

Having overruled V3's first issue challenging the denial of arbitration and having dismissed its second issue challenging the denial of its special exceptions, we affirm the trial court's first order denying arbitration, and we affirm that portion of the trial court's second order that denies arbitration on the grounds of direct benefits estoppel and intertwined claims estoppel. As to the trial court's denial of arbitration on those two grounds, we deny Butler's dismissal motion challenging our jurisdiction to consider the second appeal.

We dismiss that portion of the second appeal challenging the denial of reconsideration of the trial court's first order because we have no jurisdiction over that interlocutory challenge. We grant Butler's motion to dismiss the second appeal only to that extent.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: February 11, 2021